614 So.2d 1386 (1993)
BANK OF SUNSET & TRUST COMPANY, Plaintiff-Appellant,
v.
A.J. CHARLOT, Sr., et ux., Defendants-Appellees.
No. 92-250.
Court of Appeal of Louisiana, Third Circuit.
March 3, 1993.
*1387 Carl M. Duhon, Lafayette, for plaintiff-appellant.
Armand J. Brinkhaus, Francis A. Olivier III, Sunset, for defendants-appellees.
Before DOMENGEAUX, C.J., and KNOLL and SAUNDERS, JJ.
KNOLL, Judge.
The very limited question presented in this appeal is whether service on the Sunset Bank & Trust Company, a Louisiana bank, of a Kentucky judgment for spousal support in favor of Burgunde Charlot for past due maintenance payments, not made executory in Louisiana, along with a copy of a foreign court order purporting to garnish the bank account of A.J. Charlot, Sr., is sufficient to allow the bank to invoke a concursus proceeding to determine to whom the bank should pay the funds.
The trial court dismissed the concursus proceeding, finding that the non-executory order of garnishment and its attached judgment did not present the Bank with a competing or conflicting claim to the money on deposit.
The Bank appeals contending that the trial court erred in dismissing the concursus proceeding. In an ancillary issue, the Bank contends that the trial court further erred when it denied a motion to remove Mr. Charlot's attorney as counsel of record on the basis that he was the former counsel for the Bank.
Mr. Charlot has answered the appeal, asking for damages and attorney's fees for the Bank's prosecution of a frivolous appeal. We affirm and award damages.

FACTS
On October 3, 1991, A.J. Charlot, Sr. had $682.02 on deposit in the Bank of Sunset & Trust Company. That day a St. Landry Parish deputy sheriff served the bank with an order of garnishment from the Court of Justice in the County of Hardin, Commonwealth of Kentucky. Attached to the garnishment order was a copy of a judgment against A.J. Charlot, Sr. dated September 9, 1991, for arrearages in spousal maintenance in favor of Burgunde M. Charlot and an order dated September 18, 1991, ordering A.J. Charlot to continue paying Burgunde M. Charlot $1,000 per month for her maintenance.
On October 4, 1991, counsel for A.J. Charlot, Sr. wrote a letter to the Bank demanding that it release the funds deposited and put the Bank on notice that a lawsuit would be filed if it failed to comply.
The Bank responded by depositing the funds from Mr. Charlot's account into the registry of the court, and impleaded Mr. and Mrs. Charlot so that they could assert their respective claims to the funds.
Mr. Charlot filed a motion and order to dismiss the concursus proceeding because the documents from Kentucky were not first made executory in Louisiana and were not entitled to standing in this state. A hearing was held on Mr. Charlot's motion on December 6, 1991. The Bank and Mr. Charlot were present and represented. Ray Bordelon, the Bank employee who received the foreign state garnishment order, testified and the trial court received five documents into evidence.
The trial court informed counsel that it would not consider Mr. Charlot's motion as a motion to dismiss, because in non-jury cases such a motion can only be made at *1388 the close of plaintiff's case. Instead, the trial court treated Mr. Charlot's motion as a motion for summary judgment, and ruled in favor of Mr. Charlot, stating as follows:
"[C]ritical to that [Kentucky] order was the absence of anything indicating that judgment had been made executory in Louisiana. Now don't you think that just with a little cursory examination and investigation that the bank would have alerted itself of that fact and would have found that this is not a garnishment in Louisiana, and then that puts that bank or the judgment from Kentuckythe demand from Kentucky as nothing more than a man off the street.
* * * * * *
On the issue of whether or not summary judgment should be granted dismissing the concursus proceeding, the Court first of all notes that the judgment that was served was one for a support judgment taken in Kentucky. These judgments are to be enforced through a Uniform Support Act. I think Kentucky is a party to that compact.
* * * * * *
[T]herefore they should have gone through the local enforcement office ... I simply find that the facts before me that there were no legal competing claims. Ostensibly there were some competing claims but one was legal and one was not. I see this thing from Kentucky as being nothing more than a man off of the street who would have walked into the bank and said, I have a claim on Mr. Charlot's account, give me the money. And I think a very cursory investigation would have revealed that. For that reason I'm going to set aside the concursus...."

TRIAL COURT'S PROCEDURE FOR DISMISSAL
From the outset, we note that the trial court correctly determined that Mr. Charlot's motion for dismissal was not a proper procedural tool at the pre-trial stage of this litigation.
However, after carefully reviewing the record, we find that the trial court should have treated Mr. Charlot's motion as a peremptory exception of no cause of action. In essence that was the trial court's determination.
The trial court may notice on its own motion the failure to disclose a cause of action. LSA-C.C.P. Art. 927. Since the trial court could have noticed this peremptory exception on its own, we consider it inconsequential that Mr. Charlot incorrectly raised the objection through a motion to dismiss. Accordingly, we find that the issue of no cause of action is properly before us, and we will address the assignment of error in this light. See E.M.W., Jr. v. J.P.M., 583 So.2d 511 (La.App. 2nd Cir. 1991).

DISMISSAL OF CONCURSUS
The Bank contends that the trial court erred in ruling that it could not institute a concursus proceeding. It argues that the deputy's service on it of a judgment and garnishment order affecting Mr. Charlot's bank account was sufficient to establish a competing or conflicting claim to the funds.
LSA-C.C.P. Art. 4651 provides:
"A concursus proceeding is one in which two or more persons having competing or conflicting claims to money, property, or mortgages or privileges on property are impleaded and required to assert their respective claims contradictorily against all other parties to the proceeding."
The purpose of the concursus proceeding is equitable in nature, meaning to protect a person finding himself in possession of money which is not his from having to referee the rights of rival claimants and risk paying same to the wrong party. Transo Investment Corporation v. Oakley, 37 So.2d 560 (La.App. 2nd Cir.1948).
The threshold element for the initiation of a concursus proceeding in the case sub judice is the existence of at least two persons who have competing or conflicting claims to money. As viewed by the trial *1389 court, Mr. Charlot had the only claim to the money. We agree.
It is black-letter law in Louisiana that the only method of procedure in this state for the enforcement of an out-of-state judgment is by ordinary action in this state with citation and service. Henson v. Henson, 112 So.2d 664 (La.1959); LSA-C.C.P. Art. 2541; LSA-R.S. 13:4241, et seq. In State v. Dunn, 148 La. 460, 87 So. 236, 238 (La.1921), Justice O'Neil stated:
"In Cole v. Cunningham, 133 U.S. 107, 10 Sup.Ct. 269, 33 L.Ed. 538 [(1890)], referring to the provision in section 1 of article 4 of the Constitution of the United States, that full faith and credit shall be given in each state to the judgments of another state, it was said:
Such constitutional provision does `not make the judgments of the states domestic judgments to all intents and purposes, but only gives a general validity, faith and credit to them as evidence.
'No execution can be issued upon such judgments without a new suit in the tribunals of other states, and they enjoy, not the right of priority or privilege or lien which they have in the state where they are pronounced, but that only with the lex fori gives to them by its own laws, in their character of foreign judgments.'
In McKenzie v. Havard, 12 Mart. (O.S.) 101, it was said:
'Judgments, in other states, do not give any lien here, when their execution is not ordered by a judge of this [state].'
* * * * * *
In the Succession of Lucas, 11 La.Ann. 296, it was said:
'Foreign judgments have no executory force in this state until they acquire it by the judgment and fiat of our own tribunals. To procure such a fiat a personal action must be brought upon the judgment ...'
In Turley v. Dreyfus, 35 La.Ann. 510, it was said:
'The only remedy of the holder [of a judgment rendered by a Tennessee court] is to sue upon it as the evidence of a debt and to recover a judgment in a Louisiana court for the amount thereof, which will be a Louisiana judgment and executed as such. The court here is not concerned with the mode of execution of Tennessee judgments in that state, but only with the question whether the judgment is binding on the party sued here and has the effect of establishing, as a thing adjudged, the existence of the debt. If so, it entitles him to a judgment in a Louisiana court for the debt evidenced thereby.'"
Looking now to a later pronouncement, our brethren in the First Circuit stated in Lejeune v. Lejeune, 310 So.2d 655, 656 (La. App. 1st Cir.1975):
"In order for a foreign judgment to be executory in this state, such foreign judgment must be recognized and made the judgment of the court wherein execution is sought. This recognition must be sought through ordinary proceedings and finalized by a judgment of the court. Any proceeding which circumvents this procedure is fatally defective."
Based on these well established principles of law, we find that the Bank cannot rest its position on the service upon it of an order from a foreign state court and a copy of a foreign state court judgment. Such papers had no legal efficacy in this jurisdiction. Accordingly, on their face we find that the documents did not show either a competing or conflicting claim to the funds in Mr. Charlot's account at the Bank.
Furthermore, garnishment procedure is well established in our state. LSA-C.C.P. Art. 2411, et seq. Garnishment is initiated by a petition and the issuance of a writ of fieri facias citing a garnishee to declare under oath what property he has in his possession or under his control belonging to the judgment debtor and in what amount he is indebted to the debtor. LSA-C.C.P. Art. 2411. The garnishee is served with the citation and a copy of the petition and *1390 of the interrogatories, together with a notice that a seizure is thereby effected against any property of or indebtedness to the judgment debtor. LSA-C.C.P. Art. 2412.
In the present case, the Bank was not served with a copy of the petition for garnishment, a copy of the writ of fifa, the citation, the interrogatories, or a notice of seizure. The absence of these items should have further notified the Bank that it was not presented with a competing or conflicting claim.
Furthermore, as brought to the trial court's attention by counsel for Mr. Charlot, LSA-R.S. 6:315 was further authority for the Bank to resolve the question of whether the foreign papers presented an adverse claim to Mr. Charlot's deposits. R.S. 6:315 A provides in pertinent part:
"Notice to any bank of an adverse claim, including an adverse claim of ownership of, right to control, or access to funds, to a deposit standing on the books of the bank to the credit of any person does not require the bank to recognize the adverse claimant unless the notice is given pursuant to either a restraining order, injunction, or other appropriate process against the bank in an action instituted by the adverse claimant wherein the person to whose credit the deposit stands is made a party and served with summons, ..." (Emphasis added.)
A cursory review of the papers served on the Bank and reference to the well defined procedures of garnishment should have indicated to the Bank that it was not presented with either a restraining order, injunction or other appropriate process. Accordingly, it had no notice of an adverse claim to Mr. Charlot's funds on deposit.
Therefore, for these reasons we find that the trial court was correct in its dismissal of this concursus proceeding. Clearly, from the pleadings presented, the Bank failed to state a cause of action necessary to invoke a concursus proceeding.
Because of our affirmation of the dismissal of the concursus proceeding, we pretermit discussion of the Bank's other assignment of error which questioned the trial court's denial of the Bank's motion to remove Mr. Charlot's attorney from participation in this case. Even if we were to find the trial court erred in this case. Even if we were to find the trial court erred in this regard, we would be powerless to grant any relief since the reason for the representation no longer exists, i.e., the Bank's concursus proceeding has been dismissed.

DAMAGES FOR FRIVOLOUS APPEAL
Mr. Charlot answered the Bank's appeal, seeking damages and attorney's fees for a frivolous appeal.
The law relative to the award of damages for a frivolous appeal is contained in LSA-C.C.P. Art. 2164, and is well established in the jurisprudence. Boulet v. Foti, 539 So.2d 843 (La.App. 3rd Cir.1989), writ denied, 541 So.2d 841 (La.1989).
Based on this jurisprudence, we find that this appeal presented no serious legal questions. The action of the trial court was fully supported by the record, statutory law, and the interpretive jurisprudence. Moreover, it is obvious that the Bank did not do any investigation of papers presented to it. Since the Bank was presented with an obvious foreign judgment without legal efficacy, a cursory review of the papers conducted in the ordinary course of banking business, should have alerted the Bank that it was not presented with an adverse claim to the funds deposited in Mr. Charlot's account. Accordingly, we find that the appeal is frivolous and that damages are in order. Therefore, we believe that the imposition of $2000 attorney's fees is adequate damages to be assessed against the Bank as a result of its appeal.
Therefore, for the foregoing reasons the judgment of the trial court is amended and the appellant, the Bank of Sunset & Trust Company, is hereby condemned to pay A.J. Charlot, Sr. the sum of $2000 in damages for defending the appeal in this case. In all other respects, the judgment of the trial court is affirmed. Costs of this appeal are *1391 assessed to the Bank of Sunset & Trust Company.
AFFIRMED AS AMENDED.
SAUNDERS, J., concurs and files statement.
DOMENGEAUX, C.J., agrees to the affirmation but cannot agree that this appeal is frivolous and therefore I would not award damages for frivolous appeal.
SAUNDERS, Judge, concurring.
I feel there is no conflict of interest in the representation of Mr. Charlot by the Bank's former attorney and would so rule.